Good morning, Your Honors. My name is James Paul, Ogletree Deakins Law Firm, on behalf of Fox Associates, LLC, known locally and regionally as the Fabulous Fox Theater. We're here today to talk about the Americans with Disabilities Act. It's broad. It's good. It serves a very useful purpose. Growing up, my mother was a deaf education teacher. I know a little bit of sign language. I do training on sign language and other accommodations with regard to disabilities. And today, we're talking about what are the parameters, what accommodations and their customers, patrons, clients, patients, and others who may be using their services. In this case, plaintiffs filed an action and a lawsuit for injunctive relief to require the Fox Theater to provide captioning at all of its shows. Fox Theater is a live action theater, not a movie theater, doesn't play digital movies. One of the things, too, before I forget, plaintiffs point out to this court that the Department of Justice has specifically provided guidance and regulations with regard to movie theaters that provide digital productions of movies. In those regulations and in that guidance, Department of Justice requires and movie if it's digitally produced by the studios and available to the movie theaters. That argument actually cuts against plaintiffs in this case. The Department of Justice has not said and could have said in that guidance or guidelines or those regulations that live action theaters have to provide captioning at every single performance. This court, as well as the Supreme Court, has made clear that the ADA's broad requirements for reasonable accommodation and for effective communication in this situation requires an analysis of whether the individuals are provided meaningful access. That's an important phrase. This court just last year, in the Durand case, made very clear that meaningful access is the test and the analysis that should be used. In the Durand versus Fairview Health Services case, this court said that while the ADA is broad, while the ADA has a very useful purpose, with regard to auxiliary aids and services and effective communication, the ADA does not require institutions to provide all requested auxiliary aids and services. What's required is a legally sufficient amount of aid and service and effective communication in this case. Counsel, how would you respond to the argument that meaningful access necessarily encompasses the language of the ADA statute, including the unequal participation? So, Your Honor, what plaintiffs are arguing in this case, and it's interesting because they downplay and argue that the ADA is different or trumps or somehow supersedes the meaningful access test or analysis. That is not the test. That is not the analysis. The ADA encompasses and incorporates the meaningful access, especially in the context of effective communication. And that, Your Honors, in this case, is exactly what the situation is. The Fox Theater has never, plaintiffs admit this and concede this in their papers, has never denied a request for captioning since the request was made in this case and this lawsuit was filed. I thought you denied it in this case. I thought that's why the law, I thought when it was requested you denied it and that's why they filed the lawsuit. So, Your Honor, initially, prior to the lawsuit, there was an inquiry, and you have to understand in the context as well, for over a decade, the Fox Theater has provided American Sign Language. So, for deaf individuals who know American Sign Language, that effective communication, that reasonable accommodation has been provided for over a decade. A request came in, in this case, by one of the plaintiffs, Ms. Childress, in this action, and the Fox Theater didn't understand that captioning was a different request from sign language. That was initially denied when the lawsuit was filed and when we figured out exactly what the request was for captioning, we put in place, bought equipment, provided tablets and captioning for those showings. The actual production and performance of Rent, a musical, the Rent musical, Ms. Childress, was the performance that she wanted. Luckily, there was enough lead time in order for the Fox Theater to receive, figure out what was being requested, to purchase the tablets, to purchase the interpreter, court reporter, so that the captioning can be made. Another thing that Your Honors need to understand is that the Fox Theater doesn't produce or create the shows. It merely provides the forum, the stage, the venue for these productions. So counsel, did the district court issue an advisory opinion? Is there a case or controversy here? Well, that's a good question, Your Honor, because as I said, from the very first request for captioning for Rent, the Fox Theater has not denied any single request for captioning and has provided it. Plaintiffs don't dispute the type of captioning that's provided. They don't dispute the quality of captioning. What they're arguing and what the court provided to plaintiffs was a blank check. As long as you request it two weeks in advance, for every single performance of a show, Fox Theater has to provide captioning. Now most of the shows are for a 10-day, two-week run and are 16 performances. So Hamilton was an exception. That was many more performances in more weeks. But Rent and most plays, musicals, run for 16 shows during a run. All the Fox Theater is asking and all the Fox Theater has said is, hey, let's be reasonable. We're going to default. This is what we usually do, just like they do for sign language, just like they do for blind or visually impaired individuals. They provide audio description of plays or musicals. This is the usual show, second Saturday matinee. If you have a request, let us know. If you can't make that one, then we'll switch it or swap either your tickets or we'll move the performance that's captioned. And they've done that in every single case. About two dozen times. So there is no case for controversy? Your Honor, I would agree with that. And another question for clarification, the American Sign Language accommodation, that's not in dispute in the case, is it? Correct. Correct, Your Honor. It is not, but I think it's important to put this in the proper context and understand that what plaintiffs have asked for and what the district court has done without even mentioning the phrase or the words meaningful access, which is a required analysis, a required test in a situation and a claim in a case like this, doesn't even mention those words or give credence to the analysis that this court and federal courts apply to this situation, has said that as long as they request it, the Fox Theater is required to give captioning for all 16 performances. We could have 16 people line up and on every single day, every single performance, sometimes twice a day, provide captioning. All the Fox Theater is asking is, we've provided it, we've moved tickets, we've done it two or three times for a particular show, done it three times for the same show on different days, and the district court requests it. But what the district court did was say, hey, nope, it's a blank check, there's no parameters, and this is going to provide a slippery slope because the next time we are going to have a request for a sign language interpreter at every single show. We are going to have a request for the audio descriptions at every single show. It's no different, Your Honors, than a situation where, yes, the Fox Theater has disabled seating for mobility-impaired individuals with wheelchairs or other seating arrangements. If 30 people show up needing those seats or wanting to buy tickets, it's not a violation if all those seats are used or otherwise have been purchased already. It's the same thing here. There's never been a denial. I think the response is going to be that you're talking about the things that might happen, whereas, in fact, you have very limited requests, and it has not been burdensome up to this point. And if that situation did come to pass where you had requests for every single show and the cost became too excessive, you always have the right to come back in and ask that the injunction be modified because of an undue burden. Sure. And that's interesting, Your Honor. But, again, I think that flip-flops, one, the burden or the reality or the practicality of the situation. So what do you say the injunction should say? Limit it to five? Limit it to three? Don't limit it at all? I mean, you filed a lawsuit. They filed a lawsuit, and you resisted it. You said you wouldn't agree to it. So the judge had to do something. So what should the judge have done in this case? So, well, Your Honor, some parameters would have been appropriate or would have been nice. What the Fox Theater has offered is we're going to do it for at least one. When there's a request for multiple ones, we are going to figure it out. We're going to offer people to change the day, to swap tickets, or to do that. But right now, it's an open-ended blank check that the district court has required. So what should the district court have done? Dismiss the lawsuit and say they had no right to bring the lawsuit? Should they have done a different injunction? What relief were you asking the district court? The district court should have done, which is what they did in three out of four of plaintiff's requests, said that the Fox is in compliance. Because not before the lawsuit, but since the lawsuit was filed and since the parties began discussing this after the controversy started, Fox Theater has offered captioning every time someone's requested it. But to have the injunction say you have to provide it for every single situation does make a ruling and injunction and provide relief to plaintiffs where there is no case in controversy, and it goes well beyond what the ADA reasonableness and meaningful access requirements are. So I'm still not sure. Should the district court have dismissed the lawsuit? Should they have issued a different injunction? What are you asking us to tell the district court to do in this case? That the district court rule on the first requirement that it said captioning needs to be provided at every performance, what the court should have said is the Fox Theater is required to provide captioning for at least one performance and maybe more depending on the circumstances. This court and the meaningful access analysis incorporate a case-by-case fact-specific analysis, and that's not what the court did here. The court did not analyze what's appropriate under the circumstances. The court should have said the Fox is in compliance with what it had agreed to do long before the parties filed their motions, their cross motions for summary judgment. There should have been an opinion confirming that the Fox Theater is complying with the law. Not everything that plaintiffs are requesting, but that's not according to this court's decisions and our Ginnie and with regard to Durand say everything that plaintiffs require is not what the ADA mandates. It's meaningful access and what's required. I'd like to reserve my remaining time for rebuttal unless there are further questions. Good morning, your honors. John Waldo from Houston, Texas. To begin with, I'd like to thank you for your courtesy in helping us arrange for the CART reporting and the preferential seating for my clients. This has absolutely been a huge help to us. This courtroom is small enough that I should be able to read your lips easily when you're asking me a question. I will say like many people with hearing loss, I have trouble sometimes hearing somebody speak or even though they are speaking if there's background noise, even if the background noise is the sound of my own voice. So if I don't respond immediately to a question, just let me know with a high sign or something like that that you want to talk and believe me I will stop and let you. May it please the court, there is a certain amount of revisionist history going on here on the part of the Fox. Initially, as Judge Malloy pointed out, when Ms. Childress asked for captioning, they said no. When I then sent them a letter that said, you know, not only is it the right thing to do, but it's also the law, they ignored it. Then they got sued. Then we, you know, messed around for about eight months before we actually sat down and started talking. And then when we did, Fox said, yeah, I suppose we can do it. I mean, as far as they didn't understand the request, Ms. Childress said, here are people that provide theater captioning. The response from the Fox was, we know about those people. We know what they do. And if we decide we're going to offer captioning, we'll get in touch with them. So it was after the lawsuit was filed that they responded and said, yes, we will start doing one captioned performance of each production. We said, that's a good start, guys, and we hope that works. It immediately became apparent that it wasn't going to work because Ms. Dodden could not go that particular night. Somebody else wanted to go with friends on a different night. So we thought, okay, Fox, the way you're doing captioning, they're doing captioning available from every seat, which means unlike the situation where a reader board is put near the stage and you have to block out certain seats, and by the way, this is the way ASL is done, too. Certain seats have to be blocked out. We can see that that's a problem. But since you are not facing that problem, Fox, why can't you offer captioning for every performance when a request is made? I mean, we said, look, we don't think you need to have a captioner there if nobody wants it. But if a request is made two weeks in advance, why can't you do it any time? Well, they went along for a while and they offered one captioned performance of each show on a Saturday afternoon, and that worked out fine until Ms. Childress again said, I can't make that particular performance. Can you provide captioning for a different one? They said, yes, but that is an exception to our policy. We would do it this one time only. We will evaluate future requests on a case-by-case basis, and they will not always be granted. Only after Judge Perry issued her decision did they then start routinely doing multiple captioned performances, and that's great. But the notion that there's any kind of voluntary compliance just is belied by the fact that it took a lawsuit to get them to do anything. They then did exactly what they said they were going to do as a partial settlement agreement, and after that, they did what the district court required, because they didn't request a stay pending this appeal. Counsel, that leads me to a question then. I want to make sure I understand what your interpretation of the language of the ADA is. It's my understanding that it's your position that the ADA provides flexibility as to the type of auxiliary aids that are provided, but not as to the number of performances where accommodation is made, and it's your position that it's 100% of performances. That's correct, Your Honor. In terms of this meaningful access stuff, I think that the FOX is conflating two similar but really quite different things. One is opportunity. The other is outcome or result. The ADA specifically says that it is discriminatory to provide people with disabilities an unequal opportunity, and it's from that and basically... Let me ask a follow-up question then. It seems to me that that interpretation of the ADA leads to an all or nothing proposition, that you either provide the auxiliary aids 100% of the time, or if it's an undue burden to do so, you offer it none of the time. Well, exactly, and I think undue burden is the limiting factor on providing equal opportunity. Now, what they tend to conflate this with is equal outcome, and it's quite true that ADA and meaningful access does not require equal outcome, and indeed, until and unless medical science can figure out a way to restore our hearing, we are never going to have equal outcome. We get that. But, counsel, doesn't the all or nothing interpretation of the ADA result in less accommodation for the handicapped rather than more? I'm not sure I understand how that could be, Your Honor. It puts them in a position of providing the auxiliary aids all the time, or if it's an undue burden, none of the time, rather than for certain performances. I suppose that could be the case. Yes, there could be a possibility there would be an undue burden for them to provide auxiliary aids and services for any production. Now, what I think should happen here, again, is I think Judge Molloy said, if in fact the number of requests gets to the point that it's an undue burden, they can go back into court and ask that the injunction be modified. We acknowledge that, but what's striking about this case is they state right there on their So, what we're talking about here is the essence of a hypothetical grievance, the concern that someday the number of requests might rise to the level of undue burden. Should that happen, they have a remedy. We anticipated the undue burden defense, obviously, at the outset. So, as part of our discovery, we asked them for information about their revenue, because undue burden, it's never defined, but the DOJ has provided a list of factors to be considered, and the primary factor is the available resources as compared to the cost. Well, we thought in this situation, when we are asking for auxiliary aids and services by request, that until we know how many requests there are going to be, it's impossible to figure out what the cost is going to be. They declined to provide their revenue information, saying, well, we think it's not relevant, not going to lead to discoverable evidence. And we said, all right. If that's the case, you must not be planning to assert the undue burden defense. Now, we made cross motions for summary judgment. At no time, at no time did the Fox suggest to the trial court that the record was incomplete, that there wasn't enough information available to make a decision. But now they're coming back and saying, well, the court should have considered undue burden. The court should have considered meaningful access. In a sense, it seems almost like what they're asking for here is a mulligan. They want to go back and sort of retry some of these things that they could have tried before and didn't do it. But if you look at the record that the trial court had in front of it, the only issue was, is it going to be an undue burden to respond to multiple requests? Any time they want to come back in and produce their financial information and say, well, this is six requests, this is seven requests, this is too much, we can go ahead and do it. Can I ask a question just to clarify something in my mind? As I understand it, there's a court reporter present during the performance who does the transcription, is that right? That is my understanding. Do they have to have a court reporter at every performance of a particular play or can they do it once and then replay it? Like our court reporter will be creating or could create a transcript that you could then reuse. Can you do that or do you have to have a court reporter at every performance? This is an interesting question. You do have to have somebody there at every performance basically to display the captions in sync with the pace of that night's production. The pace is always a little bit different when you're talking about live theater unlike movies. Now, once the captions are produced the first time, I don't know why they can't be renewed. The Fox has told us that the cost for the second performance is a duplicate of the cost for the first performance. That's their problem, their issue. I mean, frankly, I think they might be getting kind of a bad deal, but it's their deal and they can fix that, not me. Now, we do have some very, very interesting developments out there in the wind. Prompted to a great extent by Judge Perry's decision in this case, the Broadway theaters are starting to work on new technology that will enable captioning for every performance from every seat to a phone. It really works very nicely, and what we're trying to do, Ms. Childress and I are both working with the Broadway theaters on this. We're saying, guys, let's take the show on the road. There's no reason the captions can't travel to St. Louis, to Houston, to you name it, just like the sets and the costumes and the cast. That's on the way. This is going to get easier and cheaper. Counsel? Yes. Can you clear this up? And this goes really to the underpinnings of the lawsuit. It's my understanding that the plaintiff, Ms. Childress, knows American Sign Language. Yes, he does, Your Honor. And it's my understanding that the theater has been providing American Sign Language interpretation. True. And really, no one's complaining about that. Is that correct? That's not really an issue in the case. Everyone's focusing on the captioning. It's important to understand, Your Honor, that American Sign Language and English are two different languages. I mean, I don't know that there's any decision on that, but it's an issue that comes up a lot, usually from the other side of the fence, I must admit, when people whose native language is ASL try to explain why written notes in English are not sufficient, basically, to provide effective communication. This is the flip side. Ms. Childress basically wants to see and hear and understand the play that the playwrights wrote, not necessarily what the ASL interpreter, and I emphasize interpreter, believes it is. So it's different. At any rate, that would be a factual issue that, again, was not explored at the trial court level, why ASL might not have been sufficient for Ms. Childress to have full and equal enjoyment. Well, you know, one of our obligations is to make sure that they're standing in the case, and it just struck me that that's been provided. Ms. Childress knows that, knows ASL, and really there was no challenge by the plaintiff here to the provision of that service by the theater, and the adequacy of that. No. Now, Ms. Childress knows ASL. However, Michelle Westmus, who is a member of the Association of Late Deaf and Adults, does not know ASL. She also used the captioning. Ms. Dodden does not know ASL. So basically what we're trying to reach with the captioning is that gap between people who use ASL. Now, Ms. Dodden, on the other hand, at least during the relevant time period, she never attended a performance at the theater, correct? That is correct. And she never made a request for accommodation. No, that's correct. So why would she, as an individual plaintiff, why would she have standing in this action? I suppose because she's a member of the Hearing Loss Association of Greater St. Louis, and some of their members have made requests and have actually gone to the captioned performances at Fox. Is all of that in the record as to the membership of these organizations and any requests by the organization and its members? Yes, I believe that's all in the record. So I guess where I am is, yes, we filed a lawsuit. They finally did it. Now, they're talking about how they have provided captioning at every performance since then. What they fail to recognize, as this court and many others have held, is that once compliance occurs post-litigation, the rules change. At that point, it is no longer up to us to say, well, we know that you won't do it in the future. It is up to them to demonstrate that there is no probability that they will resume their improper conduct. We see that in the case of Strutton v. Meade that this court decided back in 2012, and the court there basically took the position that, well, simply saying that the plaintiff can't prove you won't do it does not satisfy that heavy burden. I'd also refer the court to the Feldman v. Pro Football cases, which were captioning cases just like this, compliance after the fact, and then the defendant tried to moot it out by saying, well, you can't prove that we will stop doing it. The court said, wait, that isn't good enough because, first of all, you could just pull the plug. You've got to hire a captioner for every game. You could stop doing that any time you wanted. The plaintiff does not control their own fate. You guys do. So they said at that point it is not moot. I don't think this case is moot either simply by the virtue of their post-litigation compliance. Thank you very much for your time, and if there are no further questions, I'll turn it back over to Mr. Paul. Thank you very much. How much time does Mr. Paul have remaining? Two minutes and 15 seconds. I'll be quick. Your Honors, the district court got three out of four items correct. In fact, the district court should have said in its order that it was granting partial summary judgment for defendant because we filed cross motions for summary judgment. Items two, three, and four in the court's order are in line with what the Fox Theater was already doing and what the Fox Theater was arguing should be done. The only item in dispute was the requirement that opens up the floodgates that pushes the ADA and the effective communication requirement to its limits by saying you have to provide this for every single performance. A football game that happens once, no redos, no 16 performances of a football game, completely different. The Department of Justice has clearly outlined that auxiliary aid requirement is a flexible one and that a careful review of the ADA's legislative history makes it clear that Congress did not intend that Title VII impose upon a public accommodation the requirement that it give primary consideration to the request by the disabled individual. What plaintiffs want in this case is to flip that burden, to flip the analysis and say, well, if it's an undue burden or if you don't want to do it for 16 performances, you get to go to court. Your Honors, that's not how this should work. The Fox Theater clearly is providing and has paid for the infrastructure with the tablets, with the holders to provide the captioning. There is no risk that Fox Theater is going to wake up one morning and say, oh, well, we're not going to provide it now. And Fox Theater has agreed and committed to at least one, if not more, and has in actuality provided it for multiple performances. But to have the district court ignore the meaningful access analysis to say that it has to be the exact same access and what plaintiffs want is to be able to do it for every single performance is wrong. It's without case or controversy and it goes beyond what the ADA requires. Judge, did you have a question? Only one theater, plaintiffs have only provided one theater in the entire country that provides a live theater, play or musical setting, provides captioning for every performance. And technology is changing and going to provide it on phones. But in this case, what the district court did was err and it should be reversed and remanded for reconsideration and entering of a judgment on behalf of defendant Fox Theater. Thank you. Thank you, counsel. Appreciate your arguments. The case is submitted and you may stand aside.